**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DAVID PEREZ,

    Petitioner,

v.

LARRY SMALL,

    Respondent.
_____/

No. C 09-00113 JSW

**ORDER DENYING PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS**

Now before the Court is the petition for a writ of habeas corpus filed by Michael David Perez ("Perez") pursuant to 28 U.S.C. § 2254. After reviewing the record, the parties' papers, and the relevant legal authority, the Court HEREBY DENIES the petition.

**PROCEDURAL BACKGROUND**

On May 24, 2005, Perez was convicted of first degree murder, personal and intentional discharge of a firearm, personal use of a firearm, and for being a convicted felon in possession of a firearm. Cal. Penal Code §§ 187, 12022.53(d), 12022.5(a)(1), 12021(a)(1). Perez appealed his conviction. The court of appeals denied his appeal on July 26, 2007. The California Supreme Court denied review of his petition on October 17, 2007. Perez did not file for a writ of certiorari in the United States Supreme Court.

On January 5, 2009, Perez filed a petition for writ of habeas corpus in the California Supreme Court. In his state habeas petition, Perez presented a claim for ineffective assistance of counsel. On January 9, 2009, Perez filed the petition before this Court. On July 26, 2009, the California Supreme Court denied Perez's petition without opinion. On August 11, 2009,

this Court ordered the State to show cause why the writ should not issue.

## STATEMENT OF FACTS

On June 16, 2003, Perez shot Alfredo Duenas ("Duenas") four times in front of a 7-Eleven in San Francisco, California. (Docket ("Doc.") No. 1 at 12; Doc. No. 9 at 2.) Duenas died from the shooting. (Doc. No. 9 at 5.) Two eye-witnesses to Duenas' killing, Rachel Butler ("Butler") and Angelique Silveyra ("Silveyra"), testified at Perez's trial.

Silveyra testified that on June 14, 2003, she was with Duenas and Marco Bolanos ("Bolanos"), her ex-boyfriend, near Mission and 24th Street when Perez, then her boyfriend, called her. (RT 1742.)[1] According to Silveyra, Duenas and Marcos were members of the 22nd and Bryant Street Norteno gang, and Perez was a member of their rival gang, the Surenos. (RT 1715-17, 1867.) Duenas was also known as "Chuckie." (RT 1740.)

Silveyra picked Perez up between 2:00 and 4:00 a.m. on June 15, 2003, and drove to Modesto with him. (RT 1746.) Perez and Silveyra eventually drove to a Best Inn in Berkeley in the early evening of June 15, 2003, where Silveyra got high on methamphetamine with her cousin. (RT 1755-57, 1763.) Silveyra testified that she did not specifically remember if Perez used methamphetamine with her that night. (RT 1762.) However, she noted that Perez was a methamphetamine user. (RT 1969.)

Later that night, Silveyra and Perez picked up Michael Rojas ("Rojas"). (RT 1763-64.) Perez sat in the front passenger seat, Silveyra was driving and Rojas was in the back. (RT 1766.) Silveyra drove near the 24th and Mission BART Plaza, a known Norteno hang-out, where she stopped at a red light on 24th Street. (RT 1767.) Perez opened the passenger door and Silveyra heard gun shots. (RT 1768.) Silveyra acknowledged that she had stated at an earlier interview that Perez had a gun, but she did not remember at trial whether he had one in his possession during the incident. (RT 1771-72.) Silveyra testified that she saw a person in the BART Plaza drop as if shot. (RT 1773-74.) She then drove away from the scene. (RT 1776.)

---

[1] Citations to the trial transcript will be to "RT" followed by the page number.

2

After the shooting, Rojas and Silveyra switched places. (RT 1783.) Rojas drove them to 7-Eleven because Silveyra wanted a Slurpee. (RT 1789-90.) They parked in front of the store and Silveyra walked in. (RT 1791.)

Butler, an unbiased eyewitness to Duenas' killing, testified that around 2:00 a.m. on June 16, 2003, she drove to 7-Eleven with two other people. (RT 1099.) Butler parked next to the passenger side of a blue towncar that was later identified as Perez's. (RT 1103-05.) Butler saw Perez in the passenger seat of the car next to her, and Rojas standing in front of the car. (RT 1108, 1111.)

Butler saw a black Mustang pull into the 7-Eleven parking lot a few spots to her right. Butler saw Rojas then enter the 7-Eleven. (RT 1112-13.) Butler testified that she saw the man driving the Mustang enter the 7-Eleven. (RT 1113.)

Silveyra testified that while in the store, she saw Duenas enter. (RT 1793.) Silveyra had a conversation with Duenas at the cash register; however, they did not face each other while speaking. (RT 1796-97.)

Butler testified that sometime after Duenas entered the 7-Eleven, Rojas exited the store and stood in front of Perez's car. (RT 1118.) Butler then saw Silveyra exit the 7-Eleven, walk up to Perez's car and then walk back inside the store. (RT 1119.)

Silveyra testified that after her conversation with Duenas, she exited the 7-Eleven and walked to Perez. (RT 1798.) Perez asked her with whom she had been speaking, and Silveyra replied that she had been speaking with "Chuckie from Bryant." (RT 1799.) Silveyra then went back into the store. (RT 1800, 1119.)

Butler testified that after Silveyra went back into the store, Butler heard Perez ask Rojas "are you ready to do this?" (RT 1119.) From a distance of only five feet, Butler witnessed Perez put on gloves, one on each hand, and tie a bandana behind his neck to cover his face. (RT 1122-23.) Silveyra came out of the store and got into the back seat of Perez's car. (RT 1125-26.)

According to both Silveyra and Butler, Duenas then exited the store and Perez yelled out to him. (RT 1129-30, 1805.) Duenas yelled back "Norte controla," made a gesture and walked

3

1 to the passenger side of his Mustang. (RT 1134, 1805-06.) Butler then saw Perez get out of his
2 car holding a gun. (RT 1134-35.) Both Butler and Silveyra saw Perez walk behind Butler's car
3 to Duenas' car. (RT 1137-38, 1807.) Butler heard shots fired and reversed her car to leave the
4 parking lot. (RT 1139.) While leaving, Butler saw Perez holding his pants up with his left hand
5 and shooting Duenas. (RT 1140.)

## JURISDICTION

Perez claims violation of the Constitution of the United States and has exhausted all remedies available to him in state court, thus this Court has subject matter jurisdiction. *See* 28 U.S.C. § 2254. Furthermore, his claims are timely because they were originally filed within one year and 90 days of his conviction being final. Also, because Perez challenges his San Francisco County Superior Court conviction, a state court within this judicial district, venue is proper. *See* 28 U.S.C. § 2241(d).

## ANALYSIS

### A.  Standard of Review.

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1971). Because the petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's provisions apply. *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc).

Under AEDPA, this Court may grant the petition with respect to any claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams (Terry) v. Taylor*, 529 U.S. 362, 413 (2000) (hereinafter "*Williams*"). Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the

4

ground that relief is precluded by 28 U.S.C. section 2254(d).  *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by section 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412; *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005) (holding that "clearly established" federal law determined as of the time of the state court's last reasoned decision); *Alvarado v. Hill*, 252 F.3d 1066, 1068-69 (9th Cir. 2001).  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  The Supreme Court has explained repeatedly that AEDPA, which embodies deep-seated principles of comity, finality, and federalism, establishes a highly deferential standard for reviewing state-court determinations.  *See id.* at 436.  Thus, the court has emphasized that "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

Under the "contrary to" clause of section 2254(d)(1), a federal court may grant the writ only if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision' of the Supreme Court and nevertheless arrives at a different result."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06).  Under the "unreasonable application" clause of section 2254(d)(1), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*, 529 U.S. at 413.

A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.*

5

at 412. The objectively unreasonable standard is not a clear error standard. *Lockyer*, 538 U.S. at 75-76; *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003). After *Lockyer*, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." *Clark*, 331 F.3d at 1068.

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the highest state court has summarily denied a petitioner's claim, the habeas court may "look through" that decision to the last state court addressing the claim in a reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

The standard of review under AEDPA is somewhat different where, as in this case, the state court gives no reasoned explanation of its decision on a petitioner's federal claim and where there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002). Therefore, while a state court decision on the merits concerning a question of law normally should be afforded respect, "[i]f there is no such decision on the merits ... there is nothing to which to defer." *Greene*, 288 F.3d at 1089. In this case, the California Supreme Court summarily denied Perez's petition without opinion, and no other court has addressed his claim. (Supp. Ex., at 1.) Thus, the Court shall examine the record to determine if the California Supreme Court's denial was objectively unreasonable.

6

**B.     The California Supreme Court Was Not Objectively Unreasonable When it Denied Perez's Claim.**

Perez argues that his trial counsel provided ineffective assistance of counsel in violation of Perez's rights under the Sixth Amendment, when counsel failed to investigate and present a diminished capacity defense, and to request a jury instruction on a diminished capacity based on Perez's chronic methamphetamine use.  The State argues that not investigating a diminished capacity defense does not constitute ineffective assistance of counsel because such a defense was contrary to counsel's chosen innocence defense.  Furthermore, the State argues, Perez was not prejudiced by his counsel's choice of defense, because overwhelming evidence admitted at trial established that Perez acted with the requisite intent to establish first degree murder.  Perez counters that the evidence of intent presented at trial was not conclusive.  Thus, Perez argues, his counsel's failure to present evidence of his frequent and recent methamphetamine use prejudiced him at trial.[2]

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id*.

Ineffective assistance of counsel claims are governed by the two-prong analysis articulated in *Strickland*.  *Id*. at 687.  Under the first prong, a habeas petitioner must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness.  *Id*. at 687-89.  To satisfy the second prong, the petitioner must establish that he was also prejudiced by counsel's substandard performance.  *Id*. at 687.  One is prejudiced if there is a reasonable probability that, but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different.  *Id*. at

---

[2] Although Perez initially claimed violations of both his right to effective assistance of counsel and his right to confront witnesses, he abandoned his Confrontation Clause challenge.  (Traverse at 4.)  Thus, this Court does not consider it.

7

694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams*, 529 U.S. at 404-08.

Perez was convicted of first degree murder. To constitute first degree murder, the murder must be willful, deliberate, and premeditated. A murder is willful, deliberate, and premeditated "if the slayer killed as a result of careful thought and weighing of considerations; as a deliberate judgment or plan; carried on cooly and steadily, [especially] according to a preconceived design." *People v. Anderson*, 70 Cal. 2d 15, 26 (1964) (internal quotation omitted). However, "[t]houghts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *People v. Velasquez*, 26 Cal. 3d 425, 435 (1980) *overturned on other grounds as stated in People v. Guzman*, 45 Cal. 3d 915, 940 (1988). As such, "[t]he law does not require that an action be planned for any great period of time in advance." *People v. Rand*, 37 Cal. App. 4th 999, 1002 (1995). Even assuming that trial counsel's failure to investigate Perez's methamphetamine use fell below an objective standard of reasonableness, due to overwhelming evidence that Perez's actions were willful, deliberate and premeditated, Perez has not established that he was prejudiced.

The Ninth Circuit's decision in *Totten v. Merkle*, 137 F.3d 1172 (9th Cir. 1998), is instructive on this point. In *Totten*, the Ninth Circuit held that the petitioner was not prejudiced by his counsel's failure to present evidence of chronic and recent methamphetamine use where there was overwhelming evidence of deliberation and premeditation. *Totten*, 137 F.3d at 1175. Totten was convicted of "willful, deliberate, and premeditated" attempted murder for shooting his estranged wife. *Id.* at 1173. Evidence was presented that three days before the shooting Totten purchased a gun and ammunition. He then painted the rifle box white. On the day of the shooting, he took the box to a medical building where his wife had an appointment. Upon her exit from the building he told her the box was a present for their daughter and convinced her to

8

give him a ride to work. Once inside his wife's vehicle, Totten pulled out the rifle. The wife ran away, and while she ran, Totten shot her, kicked her body, then threw the rifle away. The court noted "[e]xtensive evidence was presented at trial showing planning and deliberate action taken by the petitioner." *Id.* at 1174. As such, "a mental-impairment defense based on methamphetamine intoxication and paranoia was completely at odds with [petitioner's] actions." *Id.* at 1175.

Like the petitioner in *Totten*, Perez now alleges that there is a reasonable probability that the jury would not have found that his actions were deliberate and premeditated due to his chronic methamphetamine use. Perez offers the declaration of Dr. Stephen Pittel which indicates that Perez was a long-time methamphetamine user, that he was on methamphetamine the night of the homicide, and that Perez was "[exhibiting] paranoid thoughts and irrational behaviors that are symptomatic of chronic methamphetamine use." (Pet., Ex. 1, at ¶ 3.) Dr. Pittel further states in his declaration that "[the] toxic psychosis caused by chronic methamphetamine abuse is characterized by a severe impairment in thought processes." (*Id.* at ¶ 5.) According to Dr. Pittel, "[t]he effects of both chronic and acute methamphetamine abuse [also] typically cause the user to experience 'racing thoughts' and to act impulsively without any consideration of alternative courses of action or weighing the consequences of their actions."[3] (*Id.* at ¶ 6.) However, Dr. Pittel's declaration that methamphetamine use may impair a person's ability to deliberate and premeditate is "completely at odds with [Perez's] actions." *Totten*, 137 F.3d at 1175. As in *Totten*, overwhelming evidence presented at Perez's trial indicated that he both had the ability to deliberate and premeditate, and that his actions were in fact deliberate and premeditated.

---

[3] Dr. Pittel also concluded that "[d]ue to Mr. Perez's chronic and acute methamphetamine use at the time of the homicide, it is very likely that he did not premeditate or deliberate before taking the actions that he did." (Pet., Ex. 1, at ¶ 7.) However, expert opinion on the ultimate issue of a defendant's mental state is not admissible under California Evidence Code section 29. *See People v. Coddington*, 23 Cal. 4th 529 (2000) (stating that expert opinion on the defendant's intent is inadmissible under Cal. Evid. Code § 29) *overruled on unrelated grounds by Price v. Superior Court*, 25 Cal. 4th 1046, 1069 n.13 (2001). Accordingly, this Court does not consider Dr. Pittel's opinion of the ultimate issue of Perez's mental state in deciding this petition.

9

The sequence of events within a few minutes before Perez shot Duenas demonstrates Perez's ability to premeditate and deliberate. Perez was in front of the 7-Eleven when Duenas, a person associated with a rival gang, entered the store. (RT at 1106.) Silveyra, who was already in the 7-Eleven, then exited. (RT 1119.) Perez indicated that he knew Silveyra was talking to someone in the 7-Eleven when he asked her who she was talking to. (RT 1799.) She replied "Chuckie from Bryant." (RT 1799.) Perez then readied himself for a confrontation with Duenas. He asked Rojas "are you ready to do this?" (RT 1121.) Perez then donned gloves and covered his face with a blue bandana. (RT 1122-23.) When Duenas exited the 7-Eleven, Perez initiated the confrontation with Duenas by yelling out to him "where are you from?" (RT 1129, 1805.) Duenas responded "Norte controla," made a gesture, and then walked to the passenger-side of his black Mustang. Perez then attacked Duenas. Perez appeared to fumble with something and then stepped out of the car with a gun, walked to Duenas' car and fired several shots. (RT 1134-43.) The State entered ample evidence that established Perez's ability to deliberate and premeditate before he killed Duenas. As such, Perez's offered declaration of Dr. Pittel on the effects of methamphetamine use does not undermine this Court's confidence in the outcome of his trial.[4] *See Strickland*, 466 U.S. at 694.

Perez cannot show prejudice because, as noted, the State presented overwhelming evidence of deliberation and premeditation at trial. Therefore, this Court denies the petition for writ of habeas corpus based on Perez's ineffective assistance of counsel claim for failure to demonstrate prejudice.

**CONCLUSION**

For the foregoing reasons, this Court DENIES Perez's petition for a writ of habeas corpus. Rule 11(a) of the Rules Governing Section 2254 cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in

---

[4] Perez also argues that trial counsel prejudiced him when his trial counsel failed to argue that because of Perez's methamphetamine use, he had an unreasonable belief that Duenas was going to harm him. Perez asserts that had the jury heard evidence that methamphetamine use can amplify perceived threats, there is a reasonable probability that the result of his trial would have been different. This argument fails for the same reason as his previous argument – Perez cannot demonstrate prejudice because the State presented overwhelming evidence of willful, deliberate, and premeditated murder.

10

which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, a certificate of appealability is not warranted in this case. A separate judgment shall issue, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 20, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE